PATRICK BYRNE, Plaintiff, *v.* THE EASTMANS COMPANY of New York, Defendant.

*Negligence — injury from a defect in a wheel by the use of which sides of beef are run upon an elevated track.*

A corporation maintaining a slaughterhouse is not liable for injuries sustained by an employee in consequence of the fall upon him of a side of beef from an elevated track, from which it was suspended by a hook attached to a wheel running upon the track, where it appears that the accident occurred in consequence of a defect in the flange of the wheel — evident to any one using it — which wheel had been selected by a co-employee of the injured man from a receptacle containing a supply of similar hooks and wheels.

MOTION by the plaintiff, Patrick Byrne, for a new trial made upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the dismissal of his complaint by direction of the court after a trial at the New York Trial Term.

*Frederick T. Hill,* for the plaintiff.

*Joseph Fettretch,* for the defendant.

INGRAHAM, J.:

The plaintiff had been in the employ of the defendant, a corporation doing business in the city of New York, for about nineteen years. For over two years prior to the 5th of April, 1895, he was engaged in what was called "shoving beef." It seems that the sides of beef were taken from the slaughterhouse and placed upon a hook to which was attached a wheel which was placed upon a metal track raised above the ground running to an elevator by which the beef was carried to a cooling room. The plaintiff, at the

time of the accident, was engaged in shoving the beef from the scales to the elevator. There were several tracks in the room which were connected with the elevator by switches. These switches were pieces of iron connecting the tracks in the room with the tracks upon the elevator. When the elevator came in place, these switches were thrown down upon the track and then made the connection between the tracks and the elevator complete. After the elevator was loaded, the switches were knocked up and the elevator then lowered to the cooling room. There were two men in charge of the switches whose duty it was to make the connection between the track on the floor and the track in the elevator, and to see that the track was complete when the elevator came in place. The plaintiff said that he had to shove the beef over this track and a switch to the elevator, and that to get it there he had to make what he called "a spring" and "good push." He said that when he took a side of beef from the scales, he had "to give it a shove to shove it off the scale;" that, at the time of the accident, he had pushed the beef over the connection from the scale on to this track, and that he gave it a shove, and could tell no more after that; that he was somewhere between the scale and the elevator; that the elevator was about nine or ten feet from the scales; that he had no trouble with this particular side of beef after he took it and gave it a shove, until it fell upon him and hurt him. It seems that this particular track with the switches had been in use for a long time prior to the accident, and on that morning had been used without any defect appearing and without an accident, the plaintiff testifying that he did not see anything wrong with the track or switch on that morning. Another witness, who was stationed about five or six feet from the plaintiff at the time of the accident, and saw what happened, said that he saw the side of beef coming down and saw it hit the plaintiff; that the wheel hit him on the head and knocked him to the ground; that the plaintiff was lying on the ground about midway between the scales and the elevator, right opposite the switch; that it was about two feet from the switch to the scales, and the rest of the distance leading to the elevator was on the curved track; that after the side of beef fell it was seen that about one and one-half inch of the flange of the wheel was broken off; that the wheel came off between the scales and the elevator about at the point

of the switch, and that it was on the curve when it fell; that this wheel and side of beef had come all the way from the slaughtering floor along that rail down to the scales, and had been shoved on to the scales, off the scales over a switch on to the track leading to the elevator, and everything appeared to be all right; that the curve commenced just beyond the scales, and when on the curve the wheel fell. This was the only witness that appears to have seen the accident. The plaintiff's witness also testified that this particular wheel with the broken flange would go all right so far as the track was straight, but that when it was upon the curve it was liable to fall, and that it was upon the curve when it fell off. There does not appear to be any evidence that this particular switch between the scales and the elevator was out of order on this morning in question. One witness testified that the switches generally had been dropping down, and that this fact had been reported to the foreman; that the effect of the dropping down naturally caused a jar in the wheel as the man pushed the beef along; but this witness said that he was then minding his own business, about fourteen feet off, and did not see what happened to bring the accident about, and that he did not know anything about this particular switch between the scales and the elevator. It appeared that there were over sixty-six switches on the floor, and another witness testified generally to the switches in the building, and said that they were in bad condition so far as he could see; that the track in some places was lower than the switches, and that in some places the switches were lower than the tracks; but this witness testified that he did not know anything about the place at which the plaintiff was working on that day; that it was not his place to work; that he did not know anything about the condition of the switch on that day. It also appeared that after those hooks, with the wheels upon them, had been used for taking the beef to the cold-storage room, they were put in boxes and sent back to the slaughterhouse and kept there in boxes, from which they were taken by the employees of the defendant and used as required. There was no evidence, therefore, to justify a finding by the jury that this particular switch was out of order at the time of the accident or that the accident was caused by any condition of the switch or track.

Evidence that switches in the building generally had been out of

order, or in such a condition that there would be a jar in pushing the beef along when the wheels passed over them, in the absence of evidence as to the condition of the particular switch at the point at which the plaintiff was working, would not justify a finding that this particular switch had anything to do with the accident, where all the witnesses for the plaintiff, including the plaintiff himself, testified that on the morning in question this track appeared to be in good condition and had been in constant use without anything indicating that it was in an unsafe condition. This is especially so when it appeared without contradiction that the wheel attached to the hook that fell was in such a condition that it was liable to fall while going around the curve which connected the scales with the elevator, and that when it was upon this curve, the beef did fall. There is nothing, therefore, that would justify a finding that the condition of the track or switch at this place had anything to do with the accident, or that the injury happened because of any imperfection or lack of repair upon the switch or track. It is apparent from all the evidence that the accident happened because of the use of this broken wheel, and that when this wheel came upon the curve leading from the switch to the elevator, it fell off.

This defect in the wheel was perfectly apparent to any one using it. The defect was not hidden; and only the most casual examination was required to show it, and it was apparent to any workman using it. There is no evidence to show that the defendant was negligent in not employing proper men to do the work of selecting these hooks from the receptacle in which they were stored for use upon this particular occasion, or that there was not a sufficient supply of perfect hooks and wheels for the workmen to use. Any one whose duty it was to take the hooks from this receptacle and put them upon the track could, with the slightest inspection, have discovered that this wheel had been broken and was not in a fit condition to be used. The fact that the workmen taking the hooks from the box and putting them upon the track would have to look up to observe its condition, because of the location of the box and the track, did not excuse such workmen from looking when engaged in the performance of the duty in placing the hooks upon the track. The fact that this hook and wheel were used when they should not have

been was entirely due to the negligence of the employee who selected this particular wheel for use upon this particular occasion in question, and that negligence was the negligence of a fellow-servant of the plaintiff, for which the defendant was not liable. The burden of proof is upon the plaintiff to show that the accident was caused by a neglect of a duty that the defendant owed to the plaintiff, and the evidence clearly established that the accident was caused by the negligence of a fellow-servant of the plaintiff for which the defendant was not liable.

The exceptions should, therefore, be overruled and judgment ordered for defendant, with costs.

VAN BRUNT, P. J., BARRETT and RUMSEY, JJ., concurred; O'BRIEN, J., dissented.

Exceptions overruled, and judgment ordered for defendant, with costs.